**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM P. LIGHTFOOT,<br>1601 KALMIA RD., NW<br>WASHINGTON, DC 20012<br><br>And<br><br>MAY LIGHTFOOT, PLLC<br>3200 MARTIN LUTHER KING JR. AVE, SE<br>3RD FLOOR<br>WASHINGTON, DC 20032<br><br>    Plaintiffs,<br><br>v.<br><br>KOONZ, MCKENNEY, JOHNSON &<br>DEPAOLIS, LLP<br>2001 PENNSYLVANIA AVE., NW #450<br>WASHINGTON, DC 20006<br><br>    Defendant. | **Case Number:** _____ |

**WILLIAM P. LIGHTFOOT AND MAY LIGHTFOOT, PLLC'S COMPLAINT AGAINST KOONZ, MCKENNEY, JOHNSON & DEPAOLIS, LLP**

William P. Lightfoot and May Lightfoot, PLLC ("May Lightfoot"), by counsel, hereby files this Complaint against Defendants, Koonz, MeKenney, Johnson & DePaolis, LLP (KMJD), and David Schloss, and allege the following:

**PARTIES**

1. Plaintiff, William P. Lightfoot, ("Bill Lightfoot") is an individual resident of the District of Columbia.

1

2. Plaintiff, May Lightfoot, PLLC is a professional limited liability company organized under the laws of the District of Columbia and with its principal place of business located in the District of Columbia.

3. KMJD is a limited liability partnership with its principal place of business in the District of Columbia. It was formerly known as Koonz McKenney DePaolis, Johnson & Lightfoot and changed its name after Mr. Lightfoot departed. For ease of reference, they are collectively referred to as KMJD throughout this pleading.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1331 and 1367 in that the claims raised by Plaintiffs arise under the laws of the United States and additional state law questions are closely related and intertwined such that the claims must be heard together.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) in that the events, acts, and omissions giving rise to this action occurred in the District of Columbia.

## FACTS RELEVANT TO ALL COUNTS

6. Mr. Bill Lightfoot is a practicing attorney in the District of Columbia where he has represented plaintiffs in personal injury cases for over 40 years.

7. Beginning in 1981, Bill Lightfoot practiced law at Koonz McKenney DePaolis, Johnson & Lightfoot. He withdrew as a partner effective September 6, 2019.

8. After Bill Lightfoot withdrew as a partner from his former firm, he joined May Lightfoot, PLLC as senior trial counsel.

9. Mr. Bill Lightfoot, May Lightfoot, and KMJD all rely on potential clients finding their firm either by referrals or internet searches for personal injury attorneys. One method used

for potential clients to find personal injury attorneys is to advertise through internet marketing services like Martindale-Hubbell, Lexis, and Google.

10.     Mr. Bill Lightfoot and May Lightfoot, through their marketing contractor, Martindale-Hubbell, established a Google My Business ("GMB") account to advertise their services as personal injury attorneys. The GMB page is depicted when a search that returns Mr. Bill Lightfoot or May Lightfoot is entered into Google's search engine. The GMB page is depicted on the main result search page on Google with hours of operation, address, website, and most importantly, the business's phone number.

11.     While at KMJD, Mr. Bill Lightfoot had his GMB page set up using a google account associated with the email address rj*****@gmail.com.

12.     Upon information and belief, that same email address—rj******@gmail.com controls KMJD's GMB page.

13.     Upon information and belief, that same email address—rj******@gmail.com controls Peter DePaolis's GMB page.

14.     Additionally, KMJD is in control of the login credentials for the rj*****@gmail.com address associated with its GMB page.

15.     From September 16, 2019 through February 20, 2020, KMJD also controlled the login for Mr. Lightfoot's GMB page by virtue of its control of the rj*****@gmail.com address.

16.     Furthermore, because KMJD controlled Mr. Lightfoot's GMB page, May Lightfoot was unable to create its own GMB page.

17.     At some point between Mr. Bill's Lightfoot's withdrawal in September 2019 and February 14, 2020, Mr. Lightfoot's and May Lightfoot's GMB pages were accessed and altered.

18. Upon information and belief, KMJD, acting through its agents, servants, and employees, intentionally, and without authorization, accessed the server that maintained Mr. Bill Lightfoot's and May Lightfoot GMB accounts.

19. The server that maintained Mr. Bill Lightfoot's and May Lightfoot's GMB accounts is used in and affects interstate commerce in that citizens of different states access the server to obtain information about Lightfoot and May Lightfoot's GMB account and other GMB accounts maintained on that server.

20. Upon information and belief, the GMB page and server were accessed by KMJD via a login associated with an email address of rj*****@gmail.com which is presumed to belong to Roger Johnson, Esquire, a KMJD partner. Upon information and belief, this email address is controlled by KMJD because other KMJD accounts, including Peter DePaolis, Esquire's, are also affiliated with the rj*****@gmail.com email address.

21. Between September 16, 2019, and February 6, 2020, Martindale-Hubbell attempted on multiple occasions to gain access to Mr. Bill Lightfoot's GMB page to create a May Lightfoot GMB page.

22. Martindale-Hubbell was unable to gain access or create a GMB page for May Lightfoot PLLC, due to KMJD's control of Mr. Bill Lightfoot GMB page and other actions.

23. Martindale-Hubbell made numerous requests to access Bill Lightfoot's GMB page. These requests were sent to the same rj*****@gmail.com email address that controlled the GMB page.

24. One such request was made on or about February 6, 2020:



25. After making the request to access Bill Lightfoot's GMB page, Martindale-Hubbell received an email stating the owner of William P. Lightfoot, rejected their request for access: "Sorry, the owner of **William P. Lightfoot** has rejected your request to become a manager on Google My Business."

26. Upon information and belief, it was KMJD that denied Martindale-Hubbell access to the GMB page.



27. Martindale appealed the rejection and temporarily had limited access allowing it to change the phone number.

28. On February 14, 2020 KMJD again took control of Mr. Bill Lightfoot GMB page and changed the phone number to 202-659-5500.



29. In summary, KMJD, acting through its agents, employees and servants, intentionally and without authorization accessed Mr. Bill Lightfoot's and May Lightfoot's GMB page, changed the phone number associated with Mr. Lightfoot's GMB page to KMJD's phone number and otherwise interfered with Mr. Lightfoot's and May Lightfoot's business and marketing to clients in the Washington, DC area.

**COUNT I – Violation 18 U.S.C. §1030 (Lightfoot and May Lightfoot v. KMJD)**

30. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1-30 as if fully set forth herein.

31.     The server that maintained Mr. Bill Lightfoot's and May Lightfoot's GMB accounts is used in and affects interstate commerce in that citizens of different states, including Maryland, Virginia and the District of Columbia, access the server to obtain information about Lightfoot and May Lightfoot's GMB account and other GMB accounts maintained on that server.

32.     KMJD's access to the server that maintained Mr. Bill Lightfoot's and May Lightfoot's GMB page was done without authorization or approval of Bill Lightfoot or May Lightfoot. Indeed, the terms and conditions for GMB use require that in order to access or change a GMB page, the user "must be the owner of the entity listed on [its] business profile or an authorized representative who is able to bind others on behalf of that entity." KMJD's access was not authorized by Lightfoot or May Lightfoot and neither KMJD nor its agents, employees, or servants were at any time authorized representatives able to bind Lightfoot or May Lightfoot to any obligation or statements.

33.     By intentionally accessing the interstate server that maintained Bill Lightfoot's and May Lightfoot's GMB page, without authorization or consent, KMJD was able to divert potential clients and business leads from Lightfoot and May Lightfoot to KMJD.

34.     As a result of this improper diversion of potential clients and business leads, Lightfoot and May Lightfoot suffered a reduction in historical client generation that had been consistent over numerous years. Lightfoot and May Lightfoot were deprived of numerous potential clients and business leads for approximately 5 months which resulted in the loss of more than $2,100,000.00.

WHEREFORE, Plaintiffs, William P. Lightfoot and May Lightfoot, PLLC, demand judgment in their favor and against Defendant, Koonz, McKenney, Johnson & DePaolis, LLP in

an amount in excess of $2,100,000.00, together with interest, costs, and other relief that this court deems just and reasonable.

**COUNT II – Trademark Infringement under 15 U.S.C. §1125 (May Lightfoot v. KMJD)**

35. Plaintiffs incorporate by reference paragraphs 1 through 35 as if set forth fully herein.

36. Beginning in or around September 2019, KMJD, acting through its agents, servants, and employees intentionally, improperly, and without authorization modified and altered May Lightfoot's GMB page and account to reroute potential clients and business leads from May Lightfoot to KMJD.

37. May Lightfoot, PLLC, is a law firm in registered to do business with the District of Columbia Department of Consumer and Regulatory Affairs.

38. The name May Lightfoot has been used continuously by May Lightfoot since June 1, 2019 to advertise and offer legal services at all time relevant to this Complaint.

39. By misappropriating and altering Mr. Lightfoot's and Lightfoot's GMB account, KMJD falsely designated the ownership, origin, and purveyor of the services advertised by Mr. Lightfoot's and May Lightfoot's GMB page in an effort to cause confusion and mistake as to the services offered and advertised by the May Lightfoot GMB page.

40. KMJD knew that it was not the purveyor of services offered by Mr. Lightfoot or May Lightfoot.

41. KMJD also knew that it was not the owner of Mr. Lightfoot's or May Lightfoot's GMB account or webpage.

42. KMJD acted willfully and knowingly in misappropriating the ownership of the GMB account and in representing that KMJD was the proper origin of Mr. Lightfoot's or May Lightfoot's services.

43. As a direct and proximate result of KMJD's misappropriation and false designation of Mr. Lightfoot's and May Lightfoot services through the GMB account, Mr. Lightfoot and May Lightfoot experienced a decline in potential client inquiries and business leads from September 2019 through February 2020. Upon return of control and correction of the GMB page, Mr. Lightfoot and May Lightfoot experienced an immediate increase in potential client inquiries and business leads, consistent with historical performance.

44. As a result of KMJD's misappropriation and false designation of Mr. Lightfoot and the May Lightfoot GMB page, Mr. Lightfoot and Lightfoot incurred losses of more than $2,100,000.00.

WHEREFORE, Plaintiff, May Lightfoot, PLLC, demands judgment in its favor and against Defendant, Koonz, McKenney, Johnson & DePaolis, LLP, in an amount in excess of $2,100,000.00, treble damages, and attorneys' fees, together with interest, costs, and other relief that this court deems just and reasonable.

## COUNT III- Tortious Interference with Prospective Advantage (William P. Lightfoot & May Lightfoot)

45. Plaintiffs incorporate by reference paragraphs 1 through 45 as if set forth fully herein.

46. After William P. Lightfoot withdrew from KMJD in September 2019, KMJD began a campaign to disparage and confuse potential clients and business contacts from leaving the firm with Mr. Lightfoot.

47. On September 28, 2019, David Schloss confirmed that the KMJD receptionist had been directed to inform all callers looking for Mr. Lightfoot that he had retired from KMJD and that Mr. Lightfoot's current contact information would not be shared with anyone looking for Mr. Lightfoot.

48. KMJD also modified and improperly altered the GMB page for Mr. Lightfoot and May Lightfoot to cause the KMJD phone number to be listed on the GMB account.

49. KMJD and Mr. Schloss took these steps to intentionally interfere with Mr. Lightfoot's law practice of which they had been the beneficiaries for nearly 40 years. KMJD and Mr. Schloss knew that Mr. Lightfoot had joined May Lightfoot and would continue to practice the same field of law he had practiced for the prior four decades. KMJD and Mr. Schloss intentionally deceived and mislead clients, potential clients, and business leads without justification or excuse in an effort to divert clients and revenues from Mr. Lightfoot and May Lightfoot, to KMJD.

50. Mr. Schloss's efforts in directing the misinformation campaign were done in the scope and furtherance of his role as a partner of KMJD.

51. As a result of KMJD and Mr. Schloss's improper and tortious interference with Mr. Lightfoot's reasonable expectations of commercial business opportunities and relationships, Mr. Lightfoot and May Lightfoot were deprived of several months of potential client contacts and business leads until KMJD and Mr. Schloss's campaign ceased. As soon as their efforts terminated, May Lightfoot experienced a significant increase in potential client contacts and business leads, consistent with historic trends of business generation.

WHEREFORE Plaintiffs, William P. Lightfoot and May Lightfoot, PLLC, demand judgment in their favor and against Defendant, Koonz, McKenney, Johnson & DePaolis, LLP, in

the amount of $2,100,000.00, together with punitive damages, interest, costs, and any other relief as this court deems just and reasonable.

### **COUNT IV – Negligence (May Lightfoot and William P. Lightfoot)**

52. Plaintiff incorporates by reference paragraphs 1 through 51 as if set forth fully herein.

53. William J. Lightfoot, ("Will Lightfoot") a former KMJD employee, left KMJD in June 2019. Upon Will Lightfoot's departure from KMJD, numerous clients chose to continue to be represented by Will Lightfoot and signed engagement agreements with May Lightfoot.

54. Beginning September 3, 2019 and continuing to this day, KMJD owed a duty to Bill Lightfoot and May Lightfoot to allow them to operate May Lightfoot consistent with the law of the District of Columbia and the Rules of Professional Conduct.

55. As part of this duty, KMJD was required to permit Bill Lightfoot and May Lightfoot to advertise their services through a GMB page without interfering with the GMB page.

56. KMJD breached this duty to Bill Lightfoot and May Lightfoot by interfering with their GMB page.

57. This breach of duty was part of a continuing course of conduct by KMJD. Indeed, from September 3, 2019 up through and including February 16, 2020, KMJD knew that Bill Lightfoot joined May Lightfoot, that Bill Lightfoot owned a GMB page, and knew or should have known the GMB page login was controlled by KMJD.

58. KMJD also breached its duty to the Plaintiffs by negligently failing to investigate its ownership and control of the GMB page and by taking over the GMB page in February 2020.

59. KMJD's breach of the duties set forth above caused damages to the Plaintiffs.

60. Plaintiffs were damaged because they were deprived of client revenues in the amount of $2,100,000 as a result of the KMJD's negligence.

WHEREFORE, for the aforementioned reasons, William P. Lightfoot and May Lightfoot, PLLC, demand judgment in their favor and against Defendant, Koonz, McKenney, Johnson & DePaolis, LLP in an amount in excess of $2,100,000.00, together with interest, costs, and other relief that this court deems just and reasonable.

### COUNT V – Conversion (William P. Lightfoot and May Lightfoot)

61. Plaintiffs incorporate by reference paragraphs 1 through 60 as if set forth fully herein.

62. Beginning in September 2019 and spanning through February 2020, KMJD exercised complete control over the GMB page. Indeed, KMJD expressly rejected Lightfoot and May Lightfoot's attempts to reclaim control over the GMB page when requested by Martindale-Hubbell.

63. By exercising complete control over the GMB page and rejecting Lightfoot and May Lightfoot's attempts to control the GMB page, KMJD completely and entirely deprived Lightfoot and May Lightfoot of the benefit and use of the GMB page from September 2019 through February 2020.

64. At least at the time of Lightfoot and May Lightfoot's attempts to take back control of the GMB page, KMJD was aware that Lightfoot was no longer associated with KMJD and intentionally and knowingly exercised dominion and control over the GMB page to which KMJD had no proprietary interest or legal right to possess or control.

65. Having received a request by Lightfoot and May Lightfoot to relinquish control over the GMB page, KMJD repudiated that request for the express purpose of damaging Lightfoot and May Lightfoot by diverting client leads from Lightfoot and May Lightfoot to KMJD.

66. As a direct and proximate result of KMJD's intentional and unlawful exercise of dominion and control over the GMB page, Lightfoot and May Lightfoot experienced an unprecedented decrease in the number of new client leads.

WHEREFORE, for the aforementioned reasons, William P. Lightfoot and May Lightfoot, PLLC, demand judgment in their favor and against Defendant, Koonz, McKenney, Johnson & DePaolis, LLP in an amount in excess of $2,100,000.00, together with interest, costs, punitive damages, and other relief that this court deems just and reasonable.

Respectfully submitted,

_____
Craig S. Brodsky (DC Bar No. 454924)
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, MD 21202
csb@gdldlaw.com
(410) 783-4014
***Attorneys for Plaintiffs, William P. Lightfoot and May Lightfoot, PLLC***

4859-4938-0876, v. 1