**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WILLIAM P. LIGHTFOOT and | ) | |
| MAY LIGHTFOOT, PLLC | ) | |
| | ) | Case No. 1:22-cv-00238-JEB |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KOONZ MCKENNEY JOHNSON & | ) | |
| DEPAOLIS LLP | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT**
**KOONZ MCKENNEY JOHNSON & DEPAOLIS LLP'S**
**MOTION TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

PROCEDURAL BACKGROUND......................................................................................... 2

SUMMARY OF ALLEGATIONS ........................................................................................ 2

LEGAL STANDARD............................................................................................................ 4

ARGUMENT ........................................................................................................................ 4

   I.    The CFAA Claim is Time-Barred and Defective on the Merits (Count I). ....................... 4

      A.    The CFAA Claim is Untimely.................................................................................... 4

      B.    Plaintiffs Have Not Alleged Facts Demonstrating that Koonz McKenney "Exceeded Authorized Access" Within the Meaning of the CFAA. .................................................. 5

      C.    Plaintiffs Have Not Suffered a Cognizable Loss Under the CFAA. .............................. 9

   II.   Plaintiffs' Claim for Trademark Infringement Fails as a Matter of Law (Count II)......... 10

      A.    Plaintiffs Have Failed to Allege Trademark Rights. .................................................. 11

      B.    Plaintiffs Do Not Allege Use of Any Trademark by Koonz McKenney................... 12

      C.    Plaintiffs Have Failed to Plead a Likelihood of Confusion........................................ 13

  III.  The Tortious Interference Claim Fails as a Matter of Law for Several Independent Reasons (Count III)........................................................................................................ 13

      A.    Count III is Barred, at Least in Part, By Res Judicata. .............................................. 13

      B.    Plaintiffs' Tortious Interference Claim Lacks Any Factual Support. ........................ 16

      C.    Plaintiffs' Alleged Damages Are Speculative and Have No Relation to the Alleged Interference. .............................................................................................................. 17

  IV.  Plaintiffs Have Not Alleged a Claim for Negligence (Count IV)................................... 18

      A.    Plaintiffs Failed to Allege the Existence of a Duty. .................................................. 18

      B.    Plaintiffs Have Failed to Allege Breach. .................................................................. 20

      C.    Plaintiffs Fail to Sufficiently Allege Damages.......................................................... 20

      D.    Count IV Should Be Dismissed as Duplicative.......................................................... 21

V.    Plaintiffs Have Failed to State a Claim for Conversion (Count V). ................................. 22

VI.   Plaintiffs' Alleged Damages are Speculative and Have No Relation to the Alleged
      Misconduct.................................................................................................................. 23

VII.  Plaintiffs' Request for Punitive Damages Fails as a Matter of Law................................ 25

CONCLUSION............................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3D Global Sols., Inc. v. MVM, Inc.*,
  552 F. Supp. 2d 1 (D.D.C. 2008) ...........................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................4

*Attias v. CareFirst, Inc.*,
  365 F. Supp. 3d 1 (D.D.C. 2019), *on reconsideration in part*, 518 F. Supp. 3d
  43 (D.D.C. 2021) ...................................................................................20, 21, 25

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015) ..............................................................................8

*Berryman-Turner v. D.C.*,
  233 F. Supp. 3d 26 (D.D.C. 2017), *aff'd*, 720 F. App'x 1 (D.C. Cir. 2018)...........................25

*Brown v. Children's Nat'l Med. Ctr.*,
  773 F. Supp. 2d 125, 138 (D.D.C. 2011) ...............................................................21

*Camp v. Kollen*,
  567 F. Supp. 2d 170 (D.D.C. 2008) ...............................................................14, 15

*Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
  130 F. Supp. 3d 236 (D.D.C. 2015) .....................................................................22

*CFA Inst. v. Andre*,
  74 F. Supp. 3d 462 (D.D.C. 2014) .......................................................................13

*Charles Schwab & Co. v. Retrophin, Inc.*,
  No. 14-CV-4294, 2015 WL 5729498 (S.D.N.Y. Sept. 30, 2015)............................15

*Cheeks of N. Am., Inc. v. Fort Myer Constr. Corp.*,
  807 F. Supp. 2d 77 (D.D.C. 2011), *aff'd*, No. 11-7117, 2012 WL 3068449
  (D.C. Cir. July 26, 2012)........................................................................................17

*Command Consulting Grp., LLC v. Neuraliq, Inc.*,
  623 F. Supp. 2d 49 (D.D.C. 2009) .......................................................................16

*Curry v. Bank of Am. Home Loans Servicing*,
  802 F. Supp. 2d 105 (D.D.C. 2011) (Boasberg, J.), *aff'd sub nom.* 466 F.
  App'x 12 (D.C. Cir. 2012).......................................................................................19

*Egilman v. Keller & Heckman, LLP*,
 401 F. Supp. 2d 105 (D.D.C. 2005) ..................................................................5

*Equity Grp., Ltd. v. Painewebber Inc.*,
 839 F. Supp. 930 (D.D.C. 1993), *aff'd*, 48 F.3d 1285 (D.C. Cir. 1995) ................................22

*Gaujacq v. Electricite de France Int'l N. Am., Inc.*,
 572 F. Supp. 2d 79 (D.D.C. 2008), *aff'd in part and remanded sub nom.*
 *Gaujacq v. EDF, Inc.*, 601 F.3d 565 (D.C. Cir. 2010) ......................................17, 18

*Girdler v. United States*,
 923 F. Supp. 2d 168 (D.D.C. 2013) ..................................................................19

*Greenpeace, Inc. v. Dow Chem. Co.*,
 97 A.3d 1053 (D.C. 2014) ..........................................................................22, 23

*\*Hedgeye Risk Mgmt., LLC v. Heldman*,
 271 F. Supp. 3d 181 (D.D.C. 2017) .........................................................5, 6, 7, 20

*Hillbroom v. PricewaterhouseCoopers LLP*,
 17 A.3d 566 (D.C. 2011) ..........................................................................20, 25

*Kaempe v. Myers*,
 367 F.3d 958 (D.C. Cir. 2004) .......................................................................23

*Kelly v. Gaton*,
 No. 19-CV-23, 2019 WL 2329464 (D.D.C. May 31, 2019) ...............................21

*Klayman v. Obama*,
 125 F. Supp. 3d 67 (D.D.C. 2015) ....................................................................4

*McCaskill v. Gallaudet Univ.*,
 36 F. Supp. 3d 145 (D.D.C. 2014) ..................................................................18

*Montana v. United States*,
 440 U.S. 147 (1979).....................................................................................14

*N. Am. Cath. Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*,
 887 F. Supp. 2d 78 (D.D.C. 2012) ..................................................................21

*Newborn v. Yahoo!, Inc.*,
 391 F. Supp. 2d 181 (D.D.C. 2005) ..................................................................12

*\*Nexans Wires S.A. v. Sark-USA, Inc.*,
 319 F. Supp. 2d 468 (S.D.N.Y. 2004), *aff'd*, 166 F. App'x 559 (2d Cir. 2006).....................10

*Papageorge v. Zucker,*
      169 A.3d 861 (D.C. 2017) ...............................................................................19

*Parr v. Ebrahimian,*
      774 F. Supp. 2d 234 (D.D.C. 2011) ................................................................21

*Pearson v. D.C.,*
      644 F. Supp. 2d 23 (D.D.C. 2009), *aff'd*, 377 F. App'x 34 (D.C. Cir. 2010)...........................2

*\*Potter v. Toei Animation Inc.,*
      839 F. Supp. 2d 49 (D.D.C. 2012), *aff'd*, No. 12-5084, 2012 WL 3055990
      (D.C. Cir. July 18, 2012).................................................................11, 12

*Primedical, Inc. v. Allied Inv. Corp.,*
      No. 90-CV-1802, 1994 WL 149139 (D.D.C. Mar. 31, 1994), *aff'd,* 50 F.3d
      1096 (D.C. Cir. 1995) ......................................................................22

*\*Register.com, Inc. v. Verio, Inc.,*
      126 F. Supp. 2d 238 (S.D.N.Y. 2000), *aff'd*, 356 F.3d 393 (2d Cir. 2004) .........................10

*Romer v. D.C.,*
      449 A.2d 1097 (D.C. 1982) ................................................................25

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP,*
      800 F. Supp. 2d 182 (D.D.C. 2011), *aff'd*, 682 F.3d 1043 (D.C. Cir. 2012).........................14

*Simms v. D.C.,*
      699 F. Supp. 2d 217 (D.D.C. 2010) ...................................................18, 19

*Smith v. United States,*
      157 F. Supp. 3d 32 (D.D.C. 2016) ..........................................................18

*Speelman v. United States,*
      461 F. Supp. 2d 71 (D.D.C. 2006) ..........................................................4

*Teltschik v. Williams & Jensen, PLLC,*
      683 F. Supp. 2d 33 (D.D.C. 2010), *aff'd,* 748 F.3d 1285 (D.C. Cir. 2014)...........................16

*\*Wash. Metro. Area Transit Auth. v. Quik Serve Foods, Inc.,*
      No. 04-CV-687, 2006 WL 1147933 (D.D.C. Apr. 28, 2006)......................................17

*Washington v. AlliedBarton Sec. Servs., LLC,*
      217 F. Supp. 3d 208 (D.D.C. 2016), *aff'd in part and remanded,* No. 16-7147,
      2017 WL 4180147 (D.C. Cir. Aug. 2, 2017) .................................................8

*Xereas v. Heiss,*
      933 F. Supp. 2d 1 (D.D.C. 2013) ..........................................................22

*Zanville v. Garza,*
   561 A.2d 1000 (D.C. 1989) ............................................................................................25

**Statutes**

15 U.S.C. § 1125(a) .........................................................................................................12

18 U.S.C. § 1030(c)(4)(A)(i)(I) .........................................................................................9

18 U.S.C. § 1030(e)(11).....................................................................................................9

18 U.S.C. § 1030(g) .......................................................................................................5, 9

Defendant Koonz McKenney Johnson & DePaolis LLP ("Koonz McKenney" or the "Firm"), by counsel, submits this Memorandum in Support of its Motion to Dismiss the Complaint filed by Plaintiffs William P. Lightfoot ("Mr. Lightfoot") and May Lightfoot, PLLC ("May Lightfoot" and collectively "Plaintiffs").  Plaintiffs' claims are hopelessly speculative and devoid of any factual support, and their allegations fail to state any claims for relief.  For all of the reasons set forth below, the Complaint should be dismissed in its entirety.

## INTRODUCTION

Facing a half-million dollar judgment stemming from a previous dispute between himself and the Firm, Mr. Lightfoot, together with May Lightfoot, filed the present Complaint alleging that Koonz McKenney "accessed and altered" Mr. Lightfoot's personal Google My Business ("GMB") page after he left the Firm,[1] and, though somewhat difficult to decipher, apparently a separate GMB page owned by May Lightfoot.  Incredibly, Plaintiffs assert these serious and false allegations against Koonz McKenney and its professionals—members of the bar of this Court— without any factual support.[2]  Virtually every allegation concerning access or alteration by Koonz McKenney is qualified as having been made "upon information and belief."  Compl. ¶¶ 12-13, 18, 20, and 26.  The Complaint is wholly speculative and based on a series of unconnected events and unproven conspiracy theories (some of which have already been dismissed in the previous arbitration).  Plaintiffs' claims are nothing more than contrived disputes intended to try to offset Mr. Lightfoot's liability to the Firm.  As set forth in detail below, the Complaint fails as matter of law and should be dismissed in its entirety.

---

[1] A GMB account provides for the management of a Google business listing.

[2] Due to the frivolous nature of the claims, and the lack of legal or evidentiary support for the asserted allegations, Koonz McKenney is evaluating a potential Rule 11 motion against Plaintiffs and their counsel and reserves all rights as to the same.

## PROCEDURAL BACKGROUND

Koonz McKenney is a law firm that was established in 1979 and currently maintains offices in Virginia, Maryland, and Washington, D.C.  Mr. Lightfoot joined Koonz McKenney in 1981. On July 3, 2019, Mr. Lightfoot voluntarily resigned from the partnership.  Mr. Lightfoot is now associated with the firm May Lightfoot PLLC as a "Senior Trial Attorney."

Following Mr. Lightfoot's departure from the Firm, disputes arose between the parties.  On September 14, 2020, Koonz McKenney commenced arbitration proceedings against Mr. Lightfoot. An arbitration hearing was held in June 2021.  On August 4, 2021, the Arbitrator issued an award ("Award"), which resulted in Mr. Lightfoot owing Koonz McKenney a total of $486,399.92 (subject to additional offsets as provided by the Award).  On August 23, 2021, Mr. Lightfoot filed a Motion to Modify or Correct the Award ("Motion to Modify").  Koonz McKenney opposed the Motion to Modify, and the Arbitrator denied Mr. Lightfoot's request in its entirety.

Koonz McKenney subsequently filed a Motion to Confirm the Award in the D.C. Superior Court, and Mr. Lightfoot responded by filing a Motion to Vacate the Award.  On February 23, 2022, the D.C. Superior Court confirmed the Award and entered judgment in favor of Koonz McKenney and against Mr. Lightfoot.  Ex. 1, Feb. 23, 2022 Order and Judgment.[3]

## SUMMARY OF ALLEGATIONS[4]

According to the Complaint, Mr. Lightfoot and May Lightfoot, through their marketing coordinator, Martindale-Hubbell, established a GMB account to advertise their services as

---

[3] The Court may take judicial notice of the existence of pleadings filed in other cases. *Pearson v. D.C.,* 644 F. Supp. 2d 23, n.19 (D.D.C. 2009), *aff'd*, 377 F. App'x 34 (D.C. Cir. 2010).  Koonz McKenney does not ask that the Court take judicial notice of the truth of the facts asserted in such pleadings.

[4] Koonz McKenney assumes the facts alleged in the Complaint are true only for purposes of this Motion.

personal injury attorneys.  Compl. ¶ 10.  Plaintiffs allege that a search for Mr. Lightfoot or May Lightfoot in the Google search engine leads to the GMB page, and that the GMB page reflects information such as "hours of operation, address, website, and most importantly, the business's phone number." *Id.*  Plaintiffs further allege that while at Koonz McKenney, Mr. Lightfoot's GMB page was created using a Google account associated with an email address that also controls Koonz McKenney's GMB page. *Id.* ¶¶ 11-12.  Plaintiffs allege that Koonz McKenney controls the login credentials for the email address associated with its GMB page and, by virtue of its control of that email address, likewise controlled the login for Mr. Lightfoot's GMB page from September 16, 2019, through February 20, 2020. *Id.* ¶¶ 14-15.

Plaintiffs then allege that "[a]t some point between Mr. Bill Lightfoot's withdrawal in September 2019 and February 14, 2020, Mr. Lightfoot's and May Lightfoot's GMB pages were accessed and altered." *Id.* ¶ 17.  According to Plaintiffs, Koonz McKenney "intentionally" and "without authorization" accessed the server that maintained Mr. Lightfoot's and May Lightfoot's GMB accounts. *Id.* ¶ 18. Relying on a series of vague and contradictory allegations, Plaintiffs then appear to allege two separate wrongs: (i) that Koonz McKenney denied Martindale-Hubbell access to Mr. Lightfoot's GMB page (*id.* ¶¶ 21-27); and (ii) that Koonz McKenney "took control of Mr. Bill Lightfoot's GMB page" (and possibly May Lightfoot's GMB page, though the Complaint is unclear) and changed the contact phone number listed on the page to 202-659-5500 (*id.* ¶¶ 28, 48). Based on those alleged wrongs, Plaintiffs assert five Counts, all of which seek the same damages—$2.1 million attributable to being deprived of unspecified "numerous potential clients and business leads for approximately 5 months." *Id.* ¶ 34.

Plaintiffs fail to allege even a single fact supporting their speculative claims.  Indeed, Plaintiffs' claim of unauthorized access with respect to Mr. Lightfoot's GMB page makes little

sense, particularly given the allegations establishing Koonz McKenney as the operator and administrator of this page.  Nor does the Complaint allege any facts suggesting that Koonz McKenney hacked into May Lightfoot's webpage.  And, most critically, Plaintiffs make no allegations whatsoever supporting their claim for damages—no allegations concerning the potential clients lost, no support for the $2.1 million figure alleged for each and every Count, and absolutely no facts supporting a causal connection to the alleged misconduct.

## LEGAL STANDARD

Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 500 U.S. 544 (2007)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Klayman v. Obama*, 125 F. Supp. 3d 67, 76 (D.D.C. 2015) (citation omitted) (internal quotation marks omitted).  In other words, "the facts alleged in the complaint 'must be enough to raise a right to relief above the speculative level[.]'" *Id.* (citation omitted).  The Court should accept well-pleaded factual allegations as true, but it "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

## ARGUMENT

I.    **THE CFAA CLAIM IS TIME-BARRED AND DEFECTIVE ON THE MERITS (COUNT I).**

A.    **The CFAA Claim is Untimely.**

Plaintiffs' own allegations concerning Koonz McKenney's failure to authorize access to Mr. Lightfoot's GMB page are fatal to the timeliness of their Computer Fraud and Abuse Act ("CFAA") claim.  Subsection (g) of the CFAA, the section providing for a civil cause of action,

states that "[n]o action may be brought . . . unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g); *Egilman v. Keller & Heckman, LLP,* 401 F. Supp. 2d 105, 110 (D.D.C. 2005).  By Plaintiffs' own allegations, their agent, Martindale-Hubbell, had unsuccessfully attempted access "on multiple occasions" between September 16, 2019, and February 6, 2020.  Compl. ¶¶ 21-22.  Yet the Complaint was not filed until January 31, 2022—more than 2 years after the alleged wrongful act and Plaintiffs' discovery of the same.  Accordingly, Count I of the Complaint is untimely and must be dismissed.

**B.**   **Plaintiffs Have Not Alleged Facts Demonstrating that Koonz McKenney "Exceeded Authorized Access" Within the Meaning of the CFAA.**

Even if Plaintiffs' CFAA claim is timely—which it is not—it should be dismissed.  To plead that someone "exceed[ed] authorized access" to a protected computer under the CFAA, a plaintiff must allege that information or particular files were accessed without authorization. *Hedgeye Risk Mgmt., LLC v. Heldman,* 271 F. Supp. 3d 181, 194-95 (D.D.C. 2017).

Here, Plaintiffs allege no unauthorized access.  In support of their claim, Plaintiffs allege that Koonz McKenney's "access to the server that maintained Mr. Bill Lightfoot's and May Lightfoot's GMB page was done without authorization or approval of Bill Lightfoot or May Lightfoot."  Compl. ¶ 32.  However, with respect to Mr. Lightfoot's personal GMB page, Plaintiffs' own allegations demonstrate without question that Koonz McKenney's access was in fact authorized and neither Bill Lightfoot nor May Lightfoot had authority to "authoriz[e] or approv[e]" said access.  *Id.*  For example, in paragraphs 11-13, Plaintiffs allege that Mr. Lightfoot's GMB page was created using a Google account associated with an email address belonging to a Koonz McKenney partner.  *Id.* ¶¶ 11-13.  Plaintiffs further allege that Koonz McKenney was in control of the login credentials for the email account associated with the GMB pages for both

Koonz McKenney and Mr. Lightfoot.  *Id.* ¶¶ 14-15.  At the time of the alleged access, it is therefore undisputed that **Koonz McKenney** owned and controlled Mr Lightfoot's GMB page.

At most, Plaintiffs appear to allege that Koonz McKenney made unauthorized changes to the page it was authorized to access and failed to provide Mr. Lightfoot with access.  But the CFAA does not extend to the use of files or information for unauthorized purposes where, as here, the individual is authorized to access the information or files at issue.  *Hedgeye Risk Mgmt.*, 271 F. Supp. 3d at 194-95.  Likewise, the failure to authorize someone else's access to a webpage—for whatever reason—cannot be understood as an **unauthorized access** under the CFAA.  Plaintiffs' own allegations are thus fatal to their claim with respect to alleged access of Mr. Lightfoot's GMB page.

Regardless, Plaintiffs have failed entirely to support their allegation that Koonz McKenney improperly changed the phone number on Mr. Lightfoot's GMB page.  In paragraph 28 of the Complaint, Plaintiffs allege that Koonz McKenney "took control of Mr. Bill Lightfoot GMB page [*sic*] and changed the phone number to 202-659-5500."  Compl. ¶ 28.  But the only information contained in the Complaint in support of this allegation is an undated screenshot of Bill Lightfoot's GMB page.  Plaintiffs have alleged **nothing** to support their false allegation that Koonz McKenney was responsible for changing the relevant phone number or that the screenshot was taken within the statute of limitations period for their CFAA claim.  Plaintiffs have failed to allege any forensic evidence or factual bases leading them to this conclusion, much less suggest they have attempted to confirm that their false accusations have even a scintilla of factual support.

Further, to the extent that Plaintiffs are attempting to raise a CFAA claim with respect to a GMB page owned by May Lightfoot, they have failed to allege even a single fact supporting their speculative allegations.  Plaintiffs do not allege any facts supporting a hacking of the May

Lightfoot web site by Koonz McKenney.  Nor do Plaintiffs allege who from Koonz McKenney accessed the May Lightfoot GMB page, why this was done, or how it was accomplished.  It is well-established that "[t]he Court need not . . . credit legal conclusions that are not supported by factual allegations[.]" *Hedgeye Risk Mgmt.*, 271 F. Supp. 3d at 195 (citation omitted).

Any claim of unauthorized access as to May Lightfoot's GMB page is also belied by Plaintiffs' own claim that "May Lightfoot was unable to create its own GMB page."  Compl. ¶ 16.  It is of course axiomatic that Koonz McKenney could not have accessed a page that did not exist.  Once again, Plaintiffs' own allegations demonstrate the lack of credibility as to any of the claims asserted against Koonz McKenney.

Finally, the glaring absence of certain allegations underscores the extent to which Count I lacks both merit and credibility.  Plaintiffs do not allege that they ever advised Koonz McKenney of their inability to access either of the referenced GMB pages or that Koonz McKenney refused them access upon being advised of the access issues.  Further, while Plaintiffs allege a request for access was made by Martindale-Hubbell on February 6, 2020, the screenshot provided to the Court reflects only the ***acknowledgment*** of such request as sent by Google.  Compl. ¶ 24.  Notably, the request itself sought access to manage the ***Koonz McKenney*** GMB page—not Mr. Lightfoot's personal page—and identified an unknown procurrox.com email address and phone number that appeared to be missing certain digits:



Ex. 2 at 3, February 6, 2020 email from Google to Roger Johnson.[5]

Other requests for management of Mr. Lightfoot's GMB page likewise contained indicia of a scam or phishing email, including multiple requests from someone named Nicole Parker—a name unfamiliar to Koonz McKenney at the time but now understood to be Mr. Lightfoot's daughter. *Id.* at 1-2, February 2020 emails from Google to Roger Johnson. On their face, the requests did not appear to be legitimate, particularly as Koonz McKenney had received no direct

---

[5] The Court may consider the text of the February 6, 2020 request, as it is referenced by Plaintiffs in the Complaint and integral to their claims. "Incorporation by reference can . . . amplify pleadings where the document is not attached by the plaintiff, but is 'referred to in the complaint and [] integral to [the plaintiff's] claim.'" *Banneker Ventures, LLC v. Graham,* 798 F.3d 1119, 1133 (D.C. Cir. 2015) (quoting *Kaempe v. Myers,* 367 F.3d 958, 965 (D.C. Cir. 2004)); *Washington v. AlliedBarton Sec. Servs., LLC*, 217 F. Supp. 3d 208, 212 n.3 (D.D.C. 2016), *aff'd in part and remanded*, No. 16-7147, 2017 WL 4180147 (D.C. Cir. Aug. 2, 2017) (allowing consideration of collective bargaining agreement addressed in breach of contract claim).

communication from Mr. Lightfoot seeking access to a GMB page.  The Complaint deliberately mischaracterizes what, at worst, appears to be a simple issue concerning the proper administrative contact for a GMB page—one that could have been at any time fixed with a simple phone call (and ultimately was resolved after a direct communication was made to Koonz McKenney on the issue). For all of these reasons, Count I should be dismissed in its entirety.

### C.    Plaintiffs Have Not Suffered a Cognizable Loss Under the CFAA.

In addition to being time-barred and deficiently pled, Count I also fails to allege or demonstrate any "loss," as defined by the statute.  The CFAA expressly requires that a civil plaintiff have a cognizable "loss" to prevail under *any* of the statute's provisions.

Specifically, the CFAA requires that a civil plaintiff demonstrate that the prohibited conduct involved one of the factors set forth in clauses (I)-(V) of subsection (c)(4)(A)(1).  18 U.S.C. § 1030(g). Plaintiffs' action falls, if at all, under clause (I).  Accordingly, Plaintiffs must have suffered a "loss . . . aggregating at least $5,000 in value."  *Id*. § 1030(c)(4)(A)(i)(I).  "Loss," in turn, is defined to include "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense," and "revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id*. § 1030(e)(11).

Here, Plaintiffs do not allege any such loss.  That is, they do not allege that they have suffered any "loss" that, in any way, resembles the cost of responding to the offense or restoring the data, program, or system.  Plaintiffs do not allege that their GMB pages or any of the data on these pages were damaged in any way.  Indeed, Plaintiffs' alleged $2.1 million in damages *cannot* be related to the costs of responding to the offense or restoring data, program, or system, because *it is the same amount of damages* that Plaintiffs pled for every single claim.

Even if, as pled, these are "consequential damages" from Koonz McKenney's conduct, the statute is clear that any such alleged "loss" must be due to an "interruption of service." *Id*. Plaintiffs, however, are not complaining about that either.  To the contrary, Plaintiffs do not allege anything about any harm to their computers or website at all, or anything whatsoever about any loss they incurred as a result of any damage to their computer or websites.  They therefore did not suffer the requisite economic "loss."  *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475-77 (S.D.N.Y. 2004) (loss needs to be related to the computer, investigative costs incurred in determining damage, cost of remedying damage, or costs incurred because computer service was "interrupted"; "lost revenue due to lost business opportunity" is not "loss" under CFAA), *aff'd*, 166 F. App'x 559 (2d Cir. 2006); *Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 252 n.12 (S.D.N.Y. 2000) (lost revenue and other consequential damage claims are permissible under the CFAA only if caused by impairment or unavailability of data; how the defendant uses the data once it is extracted from the computer is irrelevant), *aff'd*, 356 F.3d 393 (2d Cir. 2004).  For this additional reason, Count I should be dismissed.

## II.   PLAINTIFFS' CLAIM FOR TRADEMARK INFRINGEMENT FAILS AS A MATTER OF LAW (COUNT II).

Count II likewise warrants dismissal.  As an initial matter, Plaintiffs' allegations concerning trademark infringement are inconsistent and nonsensical.  Throughout the Complaint, Plaintiffs (perhaps deliberately) conflate Mr. Lightfoot's personal GMB page with the May Lightfoot firm GMB page.  As a result, it is not clear if the infringement claim is based on Koonz McKenny's asserted misuse of Mr. Lightfoot's personal GMB page only, or both Lightfoot's personal page and May Lightfoot's GMB page.

For example, in paragraph 36 of the Complaint, Plaintiffs assert that Koonz McKenny improperly took control of "May Lightfoot's GMB page," making no mention of Mr. Lightfoot's

personal GMB page.  Compl. ¶ 36.  However, a few paragraphs later, Plaintiffs allege a likelihood of confusion and/or trademark infringement as a result of Koonz McKenny's misappropriation and alteration of "Mr. Lightfoot's and Lightfoot's GMB account." *Id*. ¶ 39.[6]  And in paragraph 41 of the Complaint, Plaintiffs allege that Koonz McKenny knew "that it was not the owner of Mr. Lightfoot's or May Lightfoot's GMB account or webpage." *Id*. ¶ 41.

Similarly, in paragraphs 24 and 26 of the Complaint, Plaintiffs include copies of alleged messages from Google relating solely to Mr. Lightfoot's personal GMB page. *Id*. ¶¶ 24, 26. Paragraph 28 likewise references and includes a copy of "Mr. Bill Lightfoot [*sic*] GMB page." *Id*. ¶ 28. If, as apparently alleged, Koonz McKenny also accessed and altered May Lightfoot's firm GMB page, a copy of those messages and/or GMP pages would presumably have been included in the Complaint.  The vague, inconsistent, and unclear nature of the allegations also is shown in paragraph 16, where Plaintiffs allege that they were unable to create a May Lightfoot GMB page— an allegation wholly inconsistent with their later claim that Koonz McKenny improperly took control of May Lightfoot's GMB page. *Id*. ¶ 16.

Regardless, under either scenario, Plaintiffs' trademark claim fails as a matter of law for multiple reasons.

A.       **Plaintiffs Have Failed to Allege Trademark Rights.**

First, the trademark claim fails because Plaintiffs have not sufficiently alleged trademark rights.  To state a claim for infringement in the D.C. Circuit, a plaintiff must show that it owns a valid trademark, and that its mark "is distinctive or has acquired a secondary meaning." *Potter v. Toei Animation Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C. 2012), *aff'd*, No. 12-5084, 2012 WL 3055990 (D.C. Cir. July 18, 2012).  The only allegations even approaching the establishment of trademark

---

[6] It is unclear as to whether "May" was omitted—either on purpose or inadvertently—from this sentence.

rights relate to the mark MAY LIGHTFOOT, under which Plaintiffs claim May Lightfoot is registered to do business in the District of Columbia and has been in use continuously to advertise and offer legal services since 2019.  Compl. ¶¶ 37-38.  Those allegations do not, however, allege that the MAY LIGHTFOOT mark is either inherently distinctive or has acquired secondary meaning.  Plaintiffs have therefore not established trademark rights—the most fundamental element of a trademark claim.  *See Potter*, 839 F. Supp. 2d at 53 (dismissing the trademark claim for failure to allege distinctiveness or secondary meaning of the asserted mark).

**B.**      **Plaintiffs Do Not Allege Use of Any Trademark by Koonz McKenney.**

The trademark claim also fails because Plaintiffs did not plead the second-most important element of a trademark claim, use by the defendant that causes confusion.  It is axiomatic that a claim for trademark infringement under 1125(a) of the Lanham Act must be based on a defendant's use of a mark.  *See* 15 U.S.C. § 1125(a) ("Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, . . . which [] is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action . . . ."); *Newborn v. Yahoo!, Inc.,* 391 F. Supp. 2d 181, 189 (D.D.C. 2005) ("A plaintiff alleging a violation of the Lanham Act for trademark infringement must establish [] that it possesses a mark; [] that the defendant used the mark; . . . and [] that the defendant used the mark in a manner likely to confuse customers.").  Yet Plaintiffs do not allege that Koonz McKenney ever used the MAY LIGHTFOOT mark, nor do they identify any other use of a mark by Koonz McKenney in a manner that is likely to cause consumer confusion.  Instead, Plaintiffs rehash claims regarding alleged misappropriation of the GMB accounts, untethered to use of trademarks by either party, and wholly insufficient to support a claim of trademark infringement.

12

**C.**     **Plaintiffs Have Failed to Plead a Likelihood of Confusion.**

Finally, even if Plaintiffs' allegations regarding the GMB accounts could be generously interpreted as claiming infringement based on alleged use of Mr. Lightfoot's name within the GMB page, the claim still fails because the Complaint contains not a single allegation supporting—or even conclusions regarding—a likelihood of consumer confusion between Koonz McKenny's alleged use of Mr. Lightfoot's personal name and Plaintiffs' purported MAY LIGHTFOOT mark. *See CFA Inst. v. Andre,* 74 F. Supp. 3d 462, 467 (D.D.C. 2014) (requiring, on a motion to dismiss, allegations "that there is a substantial likelihood of confusion between the plaintiffs' mark and the alleged infringer's mark" (quoting *Globalaw Ltd. v. Carmon & Carmon L. Off.*, 452 F. Supp. 2d 1, 26-27 (D.D.C.2006))).  That alone requires dismissal of Count II.

For all of these reasons, Plaintiffs' claim for trademark infringement must be dismissed in its entirety.

**III.    THE TORTIOUS INTERFERENCE CLAIM FAILS AS A MATTER OF LAW FOR SEVERAL INDEPENDENT REASONS (COUNT III).**

Plaintiffs' tortious interference claim is premised on allegations that Koonz McKenney's receptionist had been "directed to inform all callers looking for Mr. Lightfoot that he had retired from KMJD and that Mr. Lightfoot's current contact information would not be shared with anyone looking for Mr. Lightfoot."  Compl. ¶ 47.  This claim fails for several independent reasons, any one of which is sufficient to compel dismissal as a matter of law.

**A.**     **Count III is Barred, at Least in Part, By Res Judicata.**

Plaintiffs' allegations concerning Koonz McKenney's communications to callers regarding Mr. Lightfoot's departure from the firm constitute an improper attempt to rehash a claim that has already been dismissed as legally deficient and is therefore barred by the doctrine of claim preclusion.  "Under the doctrine of res judicata, also known as claim preclusion, 'a judgment on

13

the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action.'"  *Camp v. Kollen,* 567 F. Supp. 2d 170, 172 (D.D.C. 2008) (quoting *Apotex Inc. v. FDA,* 393 F.3d 210, 217 (D.C. Cir. 2004)).  Res judicata plays an important role in ensuring "the conclusive resolution of disputes."  *Id.*  As the Supreme Court has explained, res judicata is designed "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate[,] protect[] their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Montana v. United States,* 440 U.S. 147, 153-54 (1979).  "Thus, claim preclusion 'embodies the principle that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so.'"  *Camp,* 567 F. Supp. 2d at 172 (quoting *SBC Commc'ns. Inc. v. FCC,* 407 F.3d 1223, 1229 (D.C. Cir. 2005)) (emphasis omitted).

Under District of Columbia law, for res judicata to apply, the following four elements must be satisfied: "(1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) an identity of the cause of action in both suits."  *Camp,* 567 F. Supp. 2d at 172-73.  The final "identity element" is satisfied when "there is an identity of the causes of action [and] the cases are based on the same nucleus of facts."  *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP,* 800 F. Supp. 2d 182, 190-91 (D.D.C. 2011), *aff'd,* 682 F.3d 1043 (D.C. Cir. 2012) (citation omitted).  "To determine whether two cases arise out of the same nucleus of facts, 'the court will consider whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding and usage.'"  *Id.* (quoting *Apotex,* 393 F.3d at 217).

14

Here, there is no question that each of these elements is satisfied.  Mr. Lightfoot and Koonz McKenney previously participated in a valid, binding arbitration proceeding, in which a final judgment on the merits was issued and subsequently confirmed by the D.C. Superior Court.  *See* Ex. 1.  Further, Mr. Lightfoot expressly raised the very allegations on which he now relies as part of his arbitration demand ("Lightfoot Arbitration Demand"):

> Koonz McKenney partners and employees were under a duty by contract, by common law, and the Rules of Professional Responsibility to accurately tell prospective clients the truth about Mr. Lightfoot's departure from the firm. Koonz McKenney partners and employees knew that Mr. Lightfoot had not retired from the practice of law. However, when prospective clients called to ask to speak with Mr. Lightfoot, they were told Mr. Lightfoot had retired when they knew he had not. Koonz McKenney partners and employees refused to provide current contact information for Mr. Lightfoot.

Ex. 3, Lightfoot Demand for Arbitration No. 2 at 2.  This is precisely the conduct Plaintiffs allege to support their tortious interference claim in this case.  *See* Compl. ¶ 47 (alleging that the Koonz McKenney receptionist "had been directed to inform all callers looking for Mr. Lightfoot that he had retired from [Koonz McKenney] and that Mr. Lightfoot's current contact information would not be shared with anyone looking for Mr. Lightfoot").

The Lightfoot Demand for Arbitration No. 2, in which the prior claims were asserted, was dismissed in its entirety by the Arbitrator for failure to present a cognizable claim.  Ex. 4, Apr. 28, 2021 Order No. 1 at 1.[7]  Accordingly, principles of res judicata bar Mr. Lightfoot from relitigating the tortious interference claim in this litigation.  *Camp*, 567 F. Supp. 2d  at 174.

---

[7] In addition to taking judicial notice of the pleadings in another case, the Court may also take judicial notice of the Arbitrator's findings for purposes of evaluating res judicata. *Charles Schwab & Co. v. Retrophin, Inc*., No. 14-CV-4294, 2015 WL 5729498, at *7 (S.D.N.Y. Sept. 30, 2015) (finding it was proper for the court to take judicial notice of an arbitration award to determine, on a motion to dismiss, whether res judicata applied).

### B.    Plaintiffs' Tortious Interference Claim Lacks Any Factual Support.

Plaintiffs have failed to provide any specificity whatsoever regarding the behavior alleged to form the basis of this claim.  Under District of Columbia law, a claim for tortious interference with contract has four required elements:

> '(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach.'  A tortious interference with prospective economic advantage claim has identical elements, except that the plaintiff must demonstrate the existence, knowledge, and intentional procurement of a breach of a prospective advantageous business transaction instead of meeting those elements as to a contract.

*Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 56 (D.D.C. 2010), *aff'd*, 748 F.3d 1285 (D.C. Cir. 2014) (citations omitted).

Here, the crux of Count III seems to be that Koonz McKenney improperly instructed its receptionist concerning Mr. Lightfoot's departure from the Firm.  Incredibly, however, Plaintiffs do not even allege that the alleged misinformation[8] was disseminated—just that the receptionist was "directed" to provide it.  Compl. ¶ 47.  Moreover, Plaintiffs fail to identify (i) the Koonz McKenney receptionist alleged to have been given the alleged misinformation; (ii) any of the date(s) on which the alleged misinformation was provided; or (iii) a single prospective client to whom this alleged information was provided.  In fact, nowhere in the Complaint do Plaintiffs identify a single individual or entity with whom they had a valid business relationship or expectancy with which Koonz McKenney interfered.  This type of vague and conclusory allegation without factual support is wholly insufficient to support a claim for tortious interference under D.C. law.  *See, e.g., Command Consulting Grp., LLC v. Neuraliq, Inc.*, 623 F. Supp. 2d 49, 53

---

[8] Koonz McKenney does not concede that any misstatement was made.  In fact, at one point, it was Koonz McKenney's understanding that Mr. Lightfoot was retiring.  Prior to his separation from the Firm, the parties specifically negotiated language for an internal Firm email stating that Mr. Lightfoot had retired so that his separation would not be viewed as termination or a resignation by staff or anyone outside the Firm.

(D.D.C. 2009) (dismissing claim for tortious interference where the "[t]he amorphous allegations . . . do not plead the existence of a valid business expectancy—rather, they merely outline three broad categories of relationships that may have been affected by the plaintiff's conduct."); *Wash. Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*, No. 04-CV-687, 2006 WL 1147933, at *6 (D.D.C. Apr. 28, 2006) ("A valid business expectancy requires a probability of future contractual or economic relationship and not a mere possibility.").

C.    **Plaintiffs' Alleged Damages Are Speculative and Have No Relation to the Alleged Interference.**

Even if a Koonz McKenney employee misspoke concerning Mr. Lightfoot's post-Firm employment on one, or even a few, occasions—which Koonz McKenney disputes—Plaintiffs' attempt to transmogrify this into an actionable claim valued in excess of $2 million suffers from a fatal causal defect.   Plaintiffs have not even begun to allege causation connecting a Koonz McKenney employee's statement regarding Mr. Lightfoot's post-Firm employment—assuming one was actually made—to such extensive lost opportunities and fees.   This causal disconnect is fatal to Plaintiffs' claim for tortious interference and offers an independent basis for dismissal of Count III in its entirety.   *See Cheeks of N. Am., Inc. v. Fort Myer Const. Corp.*, 807 F. Supp. 2d 77, 97-98 (D.D.C. 2011) (dismissing tortious interference claim because plaintiff "failed to plead facts that plausibly suggest that it suffered damages resulting from any alleged interference," that is, because plaintiff "fail[ed] to demonstrate a causal connection between any alleged tortious interference and its failure to win infrastructure contracts"), *aff'd*, No. 11-7117, 2012 WL 3068449 (D.C. Cir. July 26, 2012); *cf. Gaujacq v. Electricite de France Int'l N. Am., Inc.*, 572 F. Supp. 2d 79, 92 (D.D.C. 2008) (rejecting tortious interference claim because plaintiff "has not shown that

she suffered any damages resulting from the alleged tortious interference"), *aff'd in part and remanded sub nom. Gaujacq v. EDF, Inc.*, 601 F.3d 565 (D.C. Cir. 2010).[9]

## IV.   PLAINTIFFS HAVE NOT ALLEGED A CLAIM FOR NEGLIGENCE (COUNT IV).

To maintain a claim for negligence in the District of Columbia, Plaintiffs must plead "'a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach.'" *Simms v. D.C.*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010) (quoting *Wash. Metro. Area Transit Auth. v. Ferguson,* 977 A.2d 375, 377 (D.C. 2009)).  Plaintiffs have failed to allege ***any*** of the elements required to plead a negligence claim.

### A.    Plaintiffs Failed to Allege the Existence of a Duty.

Existence of a legal duty is an "essential element" of a negligence claim under D.C. law. *Id.* (citation omitted); *McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 161 (D.D.C. 2014) ("Negligence is a breach of duty; if there is no duty, there can be no breach, and hence no negligence." (citation omitted)).  A plaintiff "may not rest on mere 'conclusory assertions' as to the existence of any element of the claim, including duty." *Simms*, 699 F. Supp. 2d at 227 (citation omitted); *see Smith v. United States*, 157 F. Supp. 3d 32, 40 (D.D.C. 2016) (same).  Here, the alleged duty—that Koonz McKenney owed Plaintiffs a duty "to allow them to operate May Lightfoot consistent with the law of the District of Columbia and the Rules of Professional

---

[9] While the majority of the allegations in Count III relate to Koonz McKenney's instructions to its receptionist concerning Mr. Lightfoot's departure from the Firm, Plaintiffs include a single sentence in this Count reiterating their prior allegation that Koonz McKenney "modified and improperly altered the GMB page for Mr. Lightfoot and May Lightfoot." Compl. ¶ 48.  As with the rest of Count III, Plaintiffs have failed to identify a single individual or entity with whom they had a valid business relationship or expectancy with which Koonz McKenney intentionally interfered with respect to this allegation.  This stray allegation thus does not save Count III.

Conduct," Compl. ¶ 54, including to permit Plaintiffs "to advertise their services through a GMB page" without interference, *id.* ¶ 55—is not a viable legal obligation.[10]

*First*, the Rules of Professional Conduct "are not the source of a ***duty*** of care enforceable in tort." *Papageorge v. Zucker*, 169 A.3d 861, 864 (D.C. 2017) (citations omitted); *see Girdler v. United States*, 923 F. Supp. 2d 168, 191 (D.D.C. 2013) ("voluntary guidelines do not amount to legal requirements"). Indeed, as the Rules themselves state, "nothing in the Rules or associated Comments or th[e] Scope section is intended to confer rights on an adversary of a lawyer to enforce the Rules in a proceeding other than a disciplinary proceeding." *Papageorge*, 169 A.3d at 864 (quoting D.C. R. Prof. Conduct, Scope).

*Second*, claiming that the "law of the District of Columbia" establishes a duty "is simply too vague to establish an element of negligence." *Curry v. Bank of Am. Home Loans Servicing*, 802 F. Supp. 2d 105, 108 (D.D.C. 2011) (Boasberg, J.), *aff'd sub nom.* 466 F. App'x 12 (D.C. Cir. 2012). Indeed, such a duty is akin to the alleged "duty to use due care that every legal entity owes to every other legal entity" that this Court has expressly rejected. *Id.*

*Third,* Plaintiffs have failed to allege any basis or relationship supporting the claim that Koonz McKenney owed a duty to May Lightfoot—another law firm with which it has absolutely no relationship. Plaintiffs' alleged duty is nothing more than a "conclusory assertion[]" that cannot support a claim of negligence. *Simms*, 699 F. Supp. 2d at 227.

---

[10] To the extent that Plaintiffs did not intend to rely on "the law of the District of Columbia and the Rules of Professional Conduct" as the source for any alleged duty, Plaintiffs provide ***no basis*** for any alleged duty requiring Koonz McKenny "to allow them to operate May Lightfoot." Compl. ¶ 54. Indeed, Koonz McKenney is aware of no case in any jurisdiction that has found such a tort duty to exist.

**B.**     **Plaintiffs Have Failed to Allege Breach.**

Plaintiffs' breach allegations are also deficient.  At most, Plaintiffs allege "interfere[nce] with [Mr. Lightfoot's] GMB page," by "fail[ure] to investigate" and alleged "taking over the GMB page."  Compl. ¶¶ 56-58.  As an initial matter, Plaintiffs have stated no facts to show how Koonz McKenney's alleged "failure to investigate" was sufficient to "interfere" with the GMB page.  Even if an alleged failure to investigate ownership of Mr. Lightfoot's GMB page could constitute a valid breach, it is factually distinct from the interference alleged to constitute breach.

Further, Plaintiffs' negligence claim suffers from the same flaws as Plaintiffs' CFAA claim by alleging that Koonz McKenney "t[ook] over" Mr. Lightfoot's GMB page while, at the same time, conceding that Koonz McKenney legally controlled the login credentials used to create his GMB page.  *See supra* Section I.B; Compl. ¶¶ 11-15.  By definition, Koonz McKenney cannot illegally take over a GMB page for which it legally controlled the login information.  *Hedgeye Risk Mgmt.,* 271 F. Supp. 3d at 194-95.  This is not a breach, and Count IV can be dismissed for this additional reason.

**C.**     **Plaintiffs Fail to Sufficiently Allege Damages.**

Plaintiffs have failed to allege damages that were proximately caused by the alleged breach.  Under D.C. law, "[t]o maintain an action for negligence, a plaintiff must allege more than speculative harm from defendant's allegedly negligent conduct."  *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 10 (D.D.C. 2019) (citations omitted), *on reconsideration in part*, 518 F. Supp. 3d 43 (D.D.C. 2021); *see also Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 573 (D.C. 2011) ("[T]he mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence." (citation omitted)).  Here, like every other claim presented, Plaintiffs have alleged that Koonz McKenney's alleged negligence resulted in a loss of $2.1 million: alleged client

revenue for the entire time period for which Koonz McKenney allegedly interfered with Mr. Lightfoot's GMB page.  Plaintiffs have provided no facts supporting such damages, much less how an alleged failure to investigate or alleged takeover of the GMB page could proximately cause such damages.  *See Attias* 365 F. Supp. 3d at 10-17.

        **D.**    <u>**Count IV Should Be Dismissed as Duplicative.**</u>

Finally, in addition to failing to allege the elements of negligence, Plaintiffs' claim should be dismissed because it is entirely duplicative of Plaintiffs' CFAA and tortious interference claims. As "a matter of judicial economy" courts dismiss duplicative claims that "rest on the same factual allegations, would be decided under the same legal standards as one another, and authorize the same form of relief."  *N. Am. Cath. Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78, 84 (D.D.C. 2012) (citations omitted) (listing cases in support); *Kelly v. Gaton*, No. 19-CV-23, 2019 WL 2329464, at *3 (D.D.C. May 31, 2019) ("When a plaintiff alleges a negligence claim which is not sufficiently separated from an intentional tort, the negligence 'claim will fail . . . .'" (citation omitted)); *Parr v. Ebrahimian*, 774 F. Supp. 2d 234, 243 (D.D.C. 2011) (dismissing negligence claim because it was "duplicative," and thus "superfluous," of a claim for negligent misrepresentation); *Brown v. Children's Nat'l Med. Ctr.*, 773 F. Supp. 2d 125, 138 (D.D.C. 2011) (dismissing negligence claim "as the conduct giving rise to plaintiff's negligence claims is the same conduct giving rise to her Title VII claims"). Here, Plaintiffs' CFAA and tortious interference claims overlap with the negligence claim entirely. Each claim asserts a duty not to interfere with Mr. Lightfoot's GMB page, Koonz McKenney's alleged takeover of that page, and an alleged $2.1 million in damages.  *See* Compl. ¶¶ 32-34, 48-49.  Accordingly, Plaintiffs' negligence claim should also be dismissed as duplicative.

## V.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR CONVERSION (COUNT V).

To state a claim for conversion under D.C. law, a plaintiff must allege "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto." *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 130 F. Supp. 3d 236, 258 (D.D.C. 2015) (citation omitted).  D.C. law, however, does not recognize a cause of action for conversion of intangible property.  *3D Global Sols., Inc. v. MVM, Inc.,* 552 F. Supp. 2d 1, 10 (D.D.C. 2008); *Xereas v. Heiss*, 933 F. Supp. 2d 1, 7 (D.D.C. 2013) (explaining that D.C. has "not extended the tort of conversion to intangible property," and "Maryland courts [on which D.C. courts may rely] hold to the Restatement rule limiting the tort of conversion of intangible property to where the property is merged into a document" (citations omitted)); *3D Glob. Sols.*, 552 F. Supp. 2d at 10 ("Neither District of Columbia nor Virginia law recognizes a cause of action for conversion of intangible property." (citation omitted)).  "Where there has been no dispossession of ***property rights***, there can be no action for conversion." *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1064 (D.C. 2014) (citation omitted).

No D.C. court has recognized a claim for conversion of access to a webpage.  Indeed, D.C. law indicates just the opposite: access to a webpage—like many other types of intangible property—would not support a conversion claim.  *See, e.g.*, *Xereas*, 933 F. Supp. 2d at 7 ("D.C. courts . . . have not extended the tort of conversion to intangible property such as domain names . . . ." (citations omitted)); *Equity Grp., Ltd. v. Painewebber Inc.*, 839 F. Supp. 930, 933 (D.D.C. 1993) ("[T]his Court is persuaded that the District of Columbia would not expand conversion to encompass the appropriation of an intangible such as a business or a marketing system." (citations omitted)), *aff'd,* 48 F.3d 1285 (D.C. Cir. 1995); *Primedical, Inc. v. Allied Inv. Corp.*, No. 90-CV-1802, 1994 WL 149139, at *7 (D.D.C. Mar. 31, 1994) ("[P]laintiffs cannot sue

for conversion of such intangibles as management expertise, respect in the business community, business opportunity, or uncompensated incidental 'benefits.'"), *aff'd,* 50 F.3d 1096 (D.C. Cir. 1995); *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (rejecting conversion claim for patent interests).  Plaintiffs' conversion claim must be dismissed on this basis alone.

Further, Plaintiffs have failed to allege an "unlawful exercise" with respect to the GMB page.  Conversion is "an ***unlawful*** exercise of ownership, dominion, and control over the personalty of another in denial or repudiation of ***his right to such property***."  *Greenpeace, Inc.*, 97 A.3d at 1063 (citations omitted).  Here, Plaintiffs concede that Mr. Lightfoot's GMB page was legally controlled by Koonz McKenney.  Compl.  ¶¶ 11-15.  Plaintiffs have therefore failed to allege any unlawful exercise of dominion or control by Koonz McKenney, and Count V fails for this additional reason.

## VI.   PLAINTIFFS' ALLEGED DAMAGES ARE SPECULATIVE AND HAVE NO RELATION TO THE ALLEGED MISCONDUCT.

Plaintiffs' claim for $2.1 million in damages is speculative, at best, and has no relation to the alleged conduct of Koonz McKenney.  For each and every count of the Complaint, Plaintiffs claim the same damages—$2.1 million attributable to the alleged loss of "numerous potential clients and business leads for approximately 5 months."  Compl. ¶ 34.  Plaintiffs' sole allegation supporting this extraordinary damages figure is a vague and conclusory reference to "a reduction in historical client generation that had been consistent over numerous years."  *Id.*  Plaintiffs do not allege that the claimed historical billings have ***any*** connection to business brought in through a GMB page.  In fact, Lightfoot appears to be calculating damages ***as if the GMB page were the sole source of his client generation***—which is of course nonsensical.

Plaintiffs' asserted damages—that somehow Mr. Lightfoot would have received $420,000 per month in client referrals solely from a GMB page—are not credible, are hopelessly speculative,

and are untethered to any factual support.[11]   Furthermore, as pled, Plaintiffs' claim suffers from

additional deficiencies which render it implausible and legally deficient:

- Plaintiffs have not identified any specific clients they lost—or any specific clients Koonz McKenney gained—as result of the alleged conduct.

- Plaintiffs' damages assessment, allegedly based on historical client generation, ignores the ramp-up time inherent when switching law firms, as Mr. Lightfoot did here upon leaving Koonz McKenney.

- This assessment further ignores the reality that the alleged potential clients could have contacted Lightfoot by phone, by e-mail, by the May Lightfoot website, or otherwise.

The wholly speculative nature of Plaintiffs' claims is also demonstrated by the fact that the

asserted damages depend on the occurrence of numerous abstract and intervening events, including

but not limited to the following: (i) the potential clients (if any) would have searched for and found

Mr. Lightfoot (**and only as a result of his GMB page**); (ii) the potential clients would have had to

have contacted Mr. Lightfoot about legal representation; (iii) Mr. Lightfoot/May Lightfoot would

have had the expertise and capacity to assist the potential clients; (iv) the potential clients would

have been satisfied with Mr. Lightfoot's/May Lightfoot's experience, credentials, and rates, and

they would have chosen May Lightfoot instead of any other law firm; (v) May Lightfoot would

have agreed to represent the potential clients; (vi) for contingency fee cases (which reflect the vast

majority, if not all, of the engagements for the types of cases handled by Mr. Lightfoot), May

Lightfoot would have been successful in obtaining a favorable award for the potential clients and

collected awarded fees; and (vii) May Lightfoot would have earned enough to make distributions

---

[11] During the arbitration, Mr. Lightfoot alleged damages of $750,000—or $150,000 per month—close to one-third the amount now alleged for the very same harm. *See* Ex. 3, Lightfoot Demand for Arbitration No. 2 at 2 ("Mr. Lightfoot lost five (5) months of revenue estimated to be $750,000.")

to Mr. Lightfoot.  Damages dependent on multiple speculative events, such as those applicable here, warrant dismissal.  *See, e.g. Attias,* 365 F. Supp. 3d at 17 (dismissing claims for breach of contract, negligence, negligence per se, fraud, constructive fraud, and breach of the duty of confidentiality for failure to allege non-speculative damages); *Hillbroom*, 17 A.3d at 573 ("[T]he mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence." (citation omitted)); *cf. Berryman-Turner v. D.C.*, 233 F. Supp. 3d 26, 37 (D.D.C. 2017) (dismissing complaint because plaintiff "[f]ailed to identify a non-speculative 'concrete interest' that is ripe for adjudication"), *aff'd*, 720 F. App'x 1 (D.C. Cir. 2018); *Romer v. D.C.*, 449 A.2d 1097, 1100 (D.C. 1982) ("Damages may not be based on mere speculation or guesswork.").  Accordingly, Plaintiffs' request for damages should be stricken and dismissed.

## VII.   <u>PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES FAILS AS A MATTER OF LAW.</u>

Finally, to the extent that any of Plaintiffs' claims for damages survive dismissal (which they should not), Plaintiffs' request for punitive damages (Compl. at p. 13) should nonetheless be stricken and dismissed.  Punitive damages are "reserved only for tortious acts which are replete with malice." *Zanville v. Garza*, 561 A.2d 1000, 1002 (D.C. 1989).  Here, Plaintiffs fail to even allege malice anywhere in the Complaint, let alone allege a single fact that supports a conclusion that actual malice was present.  This is insufficient to survive dismissal and Plaintiffs' demand for punitive damages cannot survive.

## <u>CONCLUSION</u>

For the reasons set forth above, Koonz McKenney requests that this Court grant its Motion to Dismiss, dismiss the Complaint in its entirety with prejudice, and award any such further relief as the Court may deem appropriate.

Dated: April 29, 2022

Respectfully submitted,

/s/ Rebecca L. Saitta
Rebecca L. Saitta (D.C. Bar No. 488110)
rsaitta@wiley.law
Krystal B. Swendsboe (D.C. Bar No. 1552259)
kswendsboe@wiley.law
Wiley Rein LLP
2050 M Street, NW
Washington, D.C. 20036
Phone: 202.719.7000
Facsimile: 202.719.7049

*Counsel for Defendant Koonz McKenney Johnson & DePaolis LLP*